EXHIBIT B



P.O. Box 430
Buffalo, NY 14240


*__Via Electronic Mail Only__*

Foreman, Sturm and Thede LLP                                                April 2, 2020
Attn: Kyle Sturm & Linda Foreman
P.O. Box 13098
Portland, Oregon 97212
kyle.sturm@foremansturm.com
linda@foremansturm.com

|        |                |                                    |
|--------|----------------|------------------------------------|
| Re:    | Insured:       | Greenwood Acres, LLC               |
|        | Policy No.:    | 680-3F055512                       |
|        | Claim No.:     | FBB1621                            |
|        | Date of Loss:  | 01/22/2019                         |
|        | Loss Location: | 8917 NE 15th Avenue           |
|        |                | Vancouver, WA 98665                |

Dear Mr. Sturm and Ms. Foreman:

On or about January 22, 2019, Greenwood Acres, LLC ("Greenwood") notified its insurance agent, Biggs Insurance, of its intent to file an insurance claim for alleged "hidden property damage" suffered by the Greenwood Acres Apartments (the "Apartments"), located at 8917 NE 15th Ave, Vancouver, WA 98665.  Greenwood sought to send a notice of loss to all insurance companies covering the 2019 policy term and the four preceding terms.  On or about January 28, 2019, Travelers Casualty Insurance Company of America ("Travelers") received notice of the loss.

Travelers issued the following insurance policies (the "Policies) to Greenwood:

| Policy Number | Insurer | Type | Policy Period |
|---------------|---------|------|---------------|
| 680-3F055512 | Travelers | Businessowners; Commercial General Liability | 11/15/2014 – 11/15/2015 |
| 680-3F055512 | Travelers | Businessowners; Commercial General Liability | 11/15/2015 – 11/15/2016 |
| 680-3F055512 | Travelers | Businessowners; Commercial General Liability | 11/15/2016 – 11/15/2017 |
| 680-3F055512 | Travelers | Businessowners; Commercial General Liability | 11/15/2017 – 11/15/2018 |
| 680-3F055512 | Travelers | Businessowners; Commercial General Liability | 11/15/2018 – 11/15/2019 |

Cumulatively, these Policies span five annual periods, with the first 2014-2015 Policy incepting on November 15, 2014, and the last 2018-2019 Policy expiring on November 15, 2019.

Travelers has completed its investigation of the alleged physical damage to the Apartments. We write to provide you with its coverage decision. After careful consideration of the information provided by Greenwood, the Policies, and the observations and opinions of Travelers' consultants, JS Held and Young & Associates Engineering Services ("YAES"), Travelers respectfully declines coverage for the cost of repairing the damage observed at the Apartments. Travelers' understanding of the relevant facts and analysis of coverage under the Policies follows below.

## FACTS

Travelers understands that Greenwood seeks coverage for the cost of repairing and replacing components of the Apartments' building envelope system—e.g. the sheathing, framing, and weather resistant barrier.[1] Travelers further understands that Greenwood manages the Apartments, which form a residential complex that was built in 1987. The complex consists of 11, wood-framed, two-story buildings that hold 136 residential units. The buildings have wood trim, T1-11 plywood panel siding, isolated areas of brick masonry, and concrete foundations. Second story units have wood-framed decks with wood-picket guardrails that are face mounted through deck rim joists. Ground floor units have concrete patios.

The documents provided by Greenwood reflect years of moisture-related problems at the Apartments. In the 2000's, for example, maintenance records indicate that decking and stair framing began to decay, and water began leaking into building interiors. Further, numerous repairs were conducted throughout the history of the complex, particularly between 2002 and 2014, due to water leakage from windows, doors, vents, roofs, and decayed siding. Finally, water leakage, decayed siding, and decayed framing were frequently reported due to faulty original construction and ineffective repairs.

After receiving Greenwood's insurance claim, Travelers hired construction consultant JS Held and engineering consultant YAES, to assist with its investigation of the claim. JS Held and YAES performed numerous site visits to evaluate the extent of the damage. YAES and JS Held first visited the Apartments on February 19, 2019 to observe the recladding project being performed by Greenwood's contractor, GCC Restoration PLLC. YAES and JS Held coordinated to conduct additional visits on behalf of Travelers, visiting the Apartments eight

---

[1] To the extent that Greenwood seeks other coverage not addressed in this letter, please let us know immediately. Additional terms, conditions, limitations, or exclusions may apply to any further loss or damage identified by Greenwood.

Kyle Sturm & Linda Foreman
April 2, 2020
Page **3** of **24**

times in February and March 2019.  To the extent JS Held visited the site without YAES, JS Held provided its photographs to YAES for review.

Overall, YAES concluded that "[t]he lack of penetration flashings, missing weather resistive barrier, poorly maintained and/or missing sealant joints, and poorly maintained paint coatings have allowed moisture to migrate behind the cladding in localized areas, resulting in areas of staining, surface decay, and in limited areas, heavily decayed exterior wall framing." Ultimately, YAES concluded that the observed damage was primarily due to the combination of low-quality construction and improper maintenance.

## COVERAGE DISCUSSION

We address the coverage provided under the Policies below.  In doing so, we quote certain applicable excerpts from the Policies.  By quoting only excerpts of the Policies, we do not intend to waive or abrogate any other applicable provisions.  To the extent policy language quoted in this letter differs from the Policies themselves, the language in the Policies governs.

The Policies are not entirely identical, but relevant policy terms in the Policies are either identical, or they are substantially and substantively alike.  The differences between the Policy terms quoted below and the slightly different language contained in some of the Policies do not change Travelers' coverage determinations, which are set forth below.

1.      **Travelers declines coverage to the extent that the observed physical damage does not fall within the Policies' insuring agreements.**

Although the Policies do not all use identical policy forms, they share substantively similar policy language and provide coverage for direct physical loss or damage to covered property caused by a covered cause of loss:

  **A.      COVERAGE**

   We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.[2]

The term "Covered Cause of Loss" is defined as the risk of direct physical loss unless limited or excluded:

  **4.      Covered Causes of Loss**

---

[2] 2014-19 Policies (p. 1 MP T1 02 02 05).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **4** of **24**

         RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

    **a.**      Limited in Paragraph **A.5.**, Limitations; or

    **b.**      Excluded in Paragraph **B.**, Exclusions.[3]

**A.**    **Coverage does not exist for Greenwood's loss under the Policies to the extent that the loss was not fortuitous.**

The Apartments sit in the Pacific Northwest where moisture and rainwater are common. Because of its waterproofing deficiency as well as normal wear and tear, the Apartments' building envelop system experienced long-term rainwater and moisture intrusion.

Greenwood was aware that its buildings would be exposed to the wet climate of the Pacific Northwest, including ordinary and regular rain events. To the extent that ordinary and expected rain caused the loss, Greenwood cannot reasonably contend that it was unaware that the Apartments would be exposed to precipitation; thus, the loss is not covered. Furthermore, even if ordinary rain constitutes a fortuitous peril, the Policies do not provide coverage for the loss or damage to the extent that Greenwood had knowledge of these conditions before the Policies incepted.

At this time, Travelers does not decline coverage for the long-term decay and deterioration damaged observed at the Apartments based upon the lack of fortuity. But Travelers reserves its right to do so if it later determines conclusively that the loss was not fortuitous or that Greenwood knew of the loss before any of the Policies incepted.

**B.**    **Coverage does not exist for any occurrence of damage that do not exceed the applicable deductible or any occurrence that commenced before the Policies incepted.**

    The Policies limit coverage to damage that commences during their respective policy periods:

**F.**    **COMMERCIAL PROPERTY CONDITIONS**

    \* \* \*

**8.**    **Policy Period, Coverage Territory**

    Under this Coverage Form:

---

[3] 2014-19 Policies (p. 3-4 MP T1 02 02 05).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **5** of 24

> **a.** We cover loss or damage you sustain
> through acts committed or events
> occurring:
>
> > **(1)** During the policy period shown in
> > the Declarations; and
> >
> > **(2)** Within the coverage territory…[4]

The first of the Policies incepted on November 15, 2014, and the last expired on November 15, 2019.  For coverage to exist under a Policy, the loss or damage must have first begun during the respective policy period.  Loss or damage that commences before a Policy incepts or after it expires is not covered under the Policy.

Even if loss or damage commences during the policy period, the cost of repairing each occurrence of loss or damage must exceed the applicable deductible.  The 2014 through 2019 Policies state:

> **D.   DEDUCTIBLE**
>
> > **1.** We will not pay for loss or damage in any one
> > occurrence until the amount of loss or damage
> > exceeds the Businessowners Property
> > Coverage Deductible shown in the
> > Declarations.  We will then pay the amount of
> > covered loss or damage in excess of that
> > Deductible.  But we will not pay more than the
> > applicable Limit of Insurance.[5]

The 2014 through 2019 Policies each include a $10,000 deductible.[6]

Here, absent evidence that the physical damage commenced during the period the Policies were in effect, the Policies do not provide coverage.  Furthermore, to the extent that Greenwood seeks to aggregate all of the progressive deterioration observed at the Apartments, this aggregated loss commenced before the Policies incepted and thus fall outside the Policies' insuring agreements.

Finally, the cost of repairing each instance of damage must exceed the applicable deductible before any Policy provides coverage.  Travelers' investigation did not reveal evidence of any individual occurrence of damage that took place during the Policies' effective period and

---

[4] 2014-19 Policies (p. 32-33 MP T1 02 02 05).
[5] 2014-19 Policies (p. 27 MP T1 02 02 05).
[6] 2014-19 Policies (p. 1 MP T0 01 02 05).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **6** of **24**

exceeded the applicable deductible.  Thus, no single occurrence of damage triggers coverage under the Policies.

2. <u>**The Policies exclude coverage for all the perils contributing to the long-term decay and deterioration damage observed at the Apartments.**</u>

    A. **The Policies exclude coverage for faulty, defective, and inadequate conditions, including design, workmanship, and construction.**

A Washington specific policy endorsement modifies the lead-in language applicable to all policy exclusions:

> **A.** This BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:
>
>     * * *
>
> **11.** In the sections titled Covered Causes of Loss or Exclusions, any introductory paragraph preceding an exclusion or list of exclusions is replaced by the following paragraph, which pertains to application of those exclusions:
>
>     We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:
>
>     **a.** Directly and solely results in loss or damage; or
>
>     **b.** Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.[7]

The 2014 through 2018 Policies, through a Washington Endorsement, exclude coverage for faulty workmanship, deficient design or materials, and inadequate maintenance.  The 2014 through 2018 Policies state:

    **C.    2.    Exclusions**

---

[7] 2014-16 Policies (p. 1, 3 MP T4 31 12 09); 2016-17 Policy (p. 1, 3 MP T4 31 09 15); 2017-19 Policies (p. 1, 3 MP T4 31 07 16).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **7** of **24**

      **a.**    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.  But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

      **b.**    Faulty, inadequate or defective:

            **(1)**    Planning, zoning, development, surveying, siting;

            **(2)**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

            **(3)**    Materials used in repair, construction, renovation or remodeling; or

            **(4)**    Maintenance;

            of part or all of any property on or off the described premises.  But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.[8]

The 2018-2019 Policy contains essentially the same exclusion:

      **B.**    **Exclusions**

      * * *

      **b.**    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

      **c.**    Faulty, inadequate or defective:

            **(1)**    Planning, zoning, development, surveying, siting;

            **(2)**    Design, specifications, workmanship, repair,

---

[8] 2014-2018 Policies (p. 2 IL 01 73 07 02).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **8** of **24**

>> construction, renovation,
>> remodeling, grading, compaction;
>>
>> **(3)**   Materials used in repair,
>> construction, renovation or
>> remodeling; or
>>
>> **(4)**   Maintenance;
>>
>> of part or all of any property on or off the
>> described premises.
>>
>> If an excluded cause of loss that is listed
>> in Paragraphs **(1)** through **(4)** above
>> results in a Covered Cause of Loss, we
>> will pay for the resulting loss or damage
>> caused by that Covered Cause of Loss.
>> But we will not pay for:
>>
>> **(1)**   Any cost of correcting or making
>> good the fault, inadequacy or
>> defect itself, including any cost
>> incurred to tear down, tear out,
>> repair or replace any part of any
>> property to correct the fault,
>> inadequacy or defect; or
>>
>> **(2)**   Any resulting loss or damage by
>> a Covered Cause of Loss to the
>> property that has the fault,
>> inadequacy or defect until the
>> fault, inadequacy or defect is
>> corrected.[9]

Thus, a loss caused by faulty workmanship, deficient design, or inadequate maintenance is
not covered, subject to the resulting-loss provision above.

In its report, YAES identified defective construction conditions and evidence of inadequate
maintenance, which permitted moisture intrusion and moisture-related damage at the
Apartments.  According to YAES, "[t]he lack of penetration flashings, missing weather
resistive barrier, poorly maintained and/or missing sealant joints, and poorly maintained
paint coatings have allowed moisture to migrate behind the cladding in localized areas,
resulting in areas of staining, surface decay, and in limited areas, heavily decayed exterior
wall framing."  Because the Policies exclude coverage for damage caused by these faulty

---

[9] 2018-19 Policy (p. 22, 26 MP T1 02 02 05).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **9** of **24**

conditions and deficiencies, the Policies do not provide coverage for Greenwood's insurance claim.

The resulting loss provision does not apply to restore coverage.  The faulty, deficient, and inadequate conditions of the building envelope system—e.g., the windows, decks, walls, chimneys, and vents—affected only the exterior envelope system itself.  No separate property suffered damage.  Thus, the information from the investigation does not trigger the resulting-loss provision.

In addition, the only resulting damage observed was decay, wear and tear, deterioration, and fungi.  As discussed below, these perils are excluded from coverage under the Policies. Thus, the resulting loss provision does not reinstate coverage.

> **B.      The Policies exclude coverage for wear and tear, decay, and deterioration.**

The Policies, amended by a Washington specific endorsement, exclude coverage for wear and tear, decay, and deterioration.  The Washington Endorsement states:

> A.      This BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:
>
> > **3.**      Paragraph **B.2.d.** is replaced by the following:
> >
> > > **(1)**      Wear and tear;
> > >
> > > **(2)**      Rust, corrosion, ~~fungus~~, decay, deterioration, ~~wet or dry rot~~, ~~mold~~, hidden or latent defect of any quality in property that causes it to damage or destroy itself;
> > >
> > > * * *
> > >
> > > But if an excluded cause of loss that is listed in 2.d.(1) through (8) results in a "specified cause of loss", building glass breakage, "breakdown" to "covered equipment" (only if otherwise a Covered Cause of Loss), or collapse, as provided under B.1.i – Collapse of Buildings, results, we will pay for the loss or damage by that "specified cause of loss", building glass breakage, "breakdown" to "covered equipment"

Kyle Sturm & Linda Foreman
April 2, 2020
Page **10** of **24**

(only if otherwise a Covered Cause of Loss) or
collapse.[10]

The Policies' resulting loss clause restores coverage only for four named perils: (1) physical
damaged caused by a "specified cause of loss," (2) building glass breakage, (3) "breakdown"
to "covered equipment," or (4) collapse as defined in the Policy's exclusion of "Collapse of
Buildings."

The Polices define "specified cause of loss" as follows:

G.   **PROPERTY DEFINITIONS**

* * *

1.   The definition of "Specified Cause of Loss" is
deleted and replaced by the following

**"Specified Causes of Loss"** means the
following:  Fire; lightening; explosion;
windstorm or hail; smoke; aircraft or vehicles;
riot or civil commotion; vandalism; leakage
from fire extinguishing equipment; sinkhole
collapse as defined below; volcanic action;
falling objects as limited below; weight of snow,
ice or sleet; and water damage as defined
below; all only as otherwise insured against in
this Coverage Form.

a.   Sinkhole collapse means the sudden
sinking or collapse of land into
underground empty spaces created by
the action of water on limestone or
dolomite.  This cause of loss does not
include:

(1)   The cost of filling sinkholes; or

(2)   Sinking or collapse of land into
man-made underground cavities.

b.   Falling objects does not include loss of
or damage to:

---

[10] 2014-16 Policies (p. 2 MT T4 31 12 09); 2016-17 Policy (p. 3-4 MT T4 31 09 15); 2017-19
Policies (p. 1-2 MP T4 31 09 15).  A Washington Endorsement eliminates the exclusions for fungus,
decay, and wet and dry rot from this section of the Policies.  2014-19 Policies (p. 1 MP T4 91 08 06).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **11** of **24**

> **(1)**    Personal Property in the open; or
>
> **(2)**    The "interior of a building or structure", or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.
>
> **c.**    Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.
>
> When the Causes of Loss – Earthquake endorsement, Causes of Loss – Earthquake Sprinkler Leakage endorsement or Causes of Loss – Broad Form Flood endorsement is included in this policy, "specified cause of loss" also includes such cause of loss, but only to the extent such cause of loss is insured against under this Coverage Form.[11]

The Policies do not define building glass breakage.

The Polices define "breakdown" and "covered equipment" as:

> **G.    PROPERTY DEFINITIONS**
>
>> * * *
>
>> **2.    "Breakdown"**
>>
>>> **a.**    Means:
>>>
>>>> **(1)**    Failure of pressure or vacuum equipment;
>>>>
>>>> **(2)**    Mechanical failure, including rupture or bursting caused by centrifugal force; or

---

[11] 2014-19 Policies (pp. 2-3 MP T4 91 08 06).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **12** of **24**

**(3)**  Electrical failure including arcing;

that causes physical damage to
"covered equipment" and necessitates
its repair or replacement; and

**b.**  Does not mean:

**(1)**  Malfunction, including but not
limited to adjustment, alignment,
calibration, cleaning or
modification;

**(2)**  Leakage at any valve, fitting,
shaft seal, gland packing, joint or
connection;

**(3)**  Damage to any vacuum tube, gas
tube, or brush;

**(4)**  Damage to any structure or
foundation supporting the
"covered equipment" or any of its
parts.

**(5)**  The functioning of any safety or
protective device; or

**(6)**  The cracking of any part on any
internal combustion gas turbine
exposed to the products of
combustion.

* * *

**4.**  **"Covered Equipment"**

**a.**  Means the following types of equipment:

**(1)**  Equipment designed and built to
operate under internal pressure
or vacuum other than weight of
contents;

**(2)**  Electrical or mechanical
equipment that is used in the
generation, transmission or
utilization of energy;

Kyle Sturm & Linda Foreman
April 2, 2020
Page **13** of **24**

      **(3)**    Fiber optic cable; and

      **(4)**    Hoists and cranes;

**b.**    Does not mean any:

      **(1)**    "Electronic Data Processing Equipment";

      **(2)**    "Electronic Data Processing Data Media";

      **(3)**    Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

      **(4)**    Insulating or refractory material;

      **(5)**    Pressure vessels and piping that are buried below ground and require the excavation of materials to inspect, remove, repair or replace;

      **(6)**    Structure, foundation, cabinet or compartment supporting or containing the "covered equipment" or part of the "covered equipment" including penstock, draft tube or well casing;

      **(7)**    Vehicle, aircraft, self-propelled equipment or floating vessel, including any equipment mounted on or used solely with any vehicle, aircraft, self-propelled equipment or floating vessel;

      **(8)**    Elevator or escalator, but not excluding any electrical machine or apparatus mounted on or used with this equipment; or

Kyle Sturm & Linda Foreman
April 2, 2020
Page **14** of **24**

**(9)**   Equipment or any part of such
equipment manufactured by you
for sale.[12]

Finally, the resulting loss provision restores coverage for "collapse" as the term is defined in
the Policies' exclusion for "Collapse of Buildings:"

## B.   EXCLUSIONS

* * *

### i.   Collapse of Buildings

Collapse of buildings means an abrupt falling
down or caving in of a building or any part of a
building with the result being that the building
or part of a building cannot be occupied for its
intended purpose.

**(1)**   This exclusion does not apply to
collapse of buildings if caused only by
one or more of the following:

**(a)**   A "specified cause of loss" or
breakage of building glass;

**(b)**   Decay, insect or vermin damage
that is hidden from view, unless
the presence of such decay or
insect vermin damage is known
to an insured prior to collapse;

**(c)**   Weight of people or personal
property;

**(d)**   Weight of rain that collects on a
roof; or

**(e)**   Use of defective material or
methods in construction,
remodeling or renovation if the
collapse occurs during the course
of construction, remodeling or
renovation; or

---

[12] 2014-19 Policies (p. 35-36 MP T1 02 02 05).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **15** of **24**

**(f)**     Use of defective material or methods in construction, remodeling or renovation if the collapse occurs after construction, remodeling, or renovation is complete and is caused in part by a cause of loss listed in Paragraphs **(a)** through **(d)** above.

* * *

**(3)**     A building or part of a building that:

**(a)**     Is in imminent danger of abruptly falling down or caving in; or

**(b)**     Suffers a substantial impairment of structural integrity;

is not considered to have collapsed but is considered to be in a state of imminent collapse.

**(4)**     With respect to buildings in a state of imminent collapse, we will not pay for loss or damage unless the state of imminent collapse first manifests itself during the policy period and is caused only by one or more of the following which occurs during the policy period:

**(a)**     A "specified cause of loss" or breakage of glass;

**(b)**     Weight of people or personal property;

**(c)**     Weight of rain that collects on a roof; or

**(d)**     Use of defective material or methods in construction, remodeling or renovation if the state of imminent collapse occurs

Kyle Sturm & Linda Foreman
April 2, 2020
Page **16** of **24**

> during the course of construction,
> remodeling or renovation.[13]

The investigation conducted by YAES and JS Held did not show evidence of a specified cause of loss, building glass breakage, breakdown to covered equipment, or collapse, as those terms are used in the Policies. The investigation showed that the Apartments have decayed, deteriorated, and worn components. These conditions stemmed from water-proofing deficiencies and inadequate maintenance. Thus, under the exclusions quoted above, no coverage exists for Greenwood's insurance claim.

    **C.**    **The Policies exclude coverage for neglect.**

The Policies exclude coverage for physical damage caused by "Neglect:"

> **B.**    **EXCLUSIONS**
>
> …
>
> > **h.**    **Neglect**
> >
> > > Neglect of an insured to use reasonable means to save and preserve property from further damage at and after the time of loss.[14]

Here, as noted by YAES, between 2004 and 2017 Greenwood was advised of or observed the defective conditions resulting in decay and deterioration at the apartments. However, Greenwood chose to wait until 2019 to remedy the waterproofing problems and resulting damage. Thus, under the Neglect exclusion, no coverage exists for Greenwood's insurance claim due to a failure to use reasonable means to preserve property from further damage after the time of loss.

    **D.**    **The Polices exclude coverage for fungus and the extension of coverage for fungus does not apply.**

The Policies, through a Washington Endorsement, exclude coverage for physical damage caused by "fungus:"

> **A.**    The EXCLUSIONS contained in Section **B.** of the BUSINESSOWNERS PROPERTY COVERAGE FORM are amended as follows:

---

[13] 2014-19 Policies (p. 22-24 MP T1 02 02 05).
[14] 2014-19 Policies (p. 22-23 MP T1 02 02 05).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **17** of **24**

    **1.**    The following exclusion is added to **B.1.:**

    **"Fungus", Wet Rot or Dry Rot**

    **a.**    We will not pay for loss or damage, or any increase in the amount of loss or damage, caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot.

        But if "fungus", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

        This exclusion does not apply

        **(1)**    When "fungus", wet rot or dry rot results from fire or lightning; or

        **(2)**    To the extent that coverage is provided in the Additional Coverage – Limited "Fungus", Wet Rot or Dry Rot in Section **B.1.** below of this endorsement with respect to the loss or damage by a cause of loss other than fire or lightening.[15]

Thus, the Policies generally exclude coverage for fungi damage with three exceptions.

First, the Policies provide coverage for fungi damage caused by a specified cause of loss. YAES did not observe any of the perils identified as "specified causes of loss" as that term is defined in the Policies.  Accordingly, the first exception to the Fungi Exclusion does not restore coverage.

Second, the Policies provide coverage for fungi damage that results from fire or lightning. Because none of the fungi damage observed at the Apartments resulted from fire or lightening, the second exception does not apply.

Finally, the third exception is that the Fungi Exclusion does not apply to physical damage covered under an additional limited coverage for fungi damage (the "Limited Fungi Coverage"), which applies only in the following circumstances:

---

[15] 2014-19 Policies (p. 1 MP T4 91 08 06).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **18** of **24**

    **B.**    The Additional Coverages contained in Section **A.6.** of the BUSINESSOWNERS PROPERTY COVERAGE FORM are amended as follows:

        **1.**    The following Additional Coverage is added:

            **Additional Coverage – Limited "Fungus", Wet Rot or Dry Rot**

            **a.**    The coverage described in **b.** and **c.** below only applies when the "fungus", wet rot or dry rot is the result of a "specified cause of loss", other than fire or lightning, that occurs during the policy period and only if all reasonable means have been used to save and preserve the property from further damage at the time of and after that occurrence.

            **b.**    Limited "Fungus", Wet Rot or Dry Rot Coverage – Direct Damage

                **(1)**    We will pay for direct physical loss or damage to Covered Property caused by "fungus", wet rot or dry rot, including:

                    **(a)**    The cost of removal of the "fungus", wet rot or dry rot;

                    **(b)**    The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet rot or dry rot; and

                    **(c)**    The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet rot or dry rot are present.

                **(2)**    The coverage described in **b.(1)** above is limited to $15,000.

Kyle Sturm & Linda Foreman
April 2, 2020
Page **19** of **24**

Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage under this coverage arising out of all occurrence of "specified causes of loss" (other than fire or lightening) which take place in a 12 month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet rot or dry rot, we will not pay more than a total of $15,000 even if the "fungus", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(3)     The coverage provided under this Limited "Fungus", Wet Rot or Dry Rot Coverage – Direct Damage does not increase the applicable Limit of Insurance on any Covered Property.  If a particular occurrence results in loss or damage by "fungus", wet rot or dry rot, and other loss or damage, we will not pay more for the total of all loss or damage than the applicable Limit of Insurance on the Covered Property.

**(4)**     If there is covered loss or damage to Covered Property that is not caused by "fungus", wet rot or dry rot, loss payment will not be limited by the terms of the Limited "Fungus", Wet Rot or Dry Rot Coverage – Direct Damage, except to the extent that "fungus", wet rot or dry rot causes an increase in the loss.  Any such increase in the loss will be subject to the terms of this Limited "Fungus", Wet Rot or Dry

Kyle Sturm & Linda Foreman
April 2, 2020
Page **20** of **24**

Rot Coverage – Direct
Damage.[16]

Thus, under these provisions the Limited Fungi Coverage applies only if the fungi, mold, wet rot, or dry rot results from a specified cause of loss.  Again, however, YAES did not observe any damage caused by a specified cause of loss, and, therefore the Limited Fungi Coverage does not apply.

**E.     The Policies limit coverage for interior water intrusion.**

The Policies limit coverage for interior water intrusion:

**5.     Limitations**

   **a.     We will not pay for loss of or damage to:**

   **(1)     The "interior of any building or structure"
   or to personal property in the building or
   structure, caused by rain, snow, sleet,
   ice, sand or dust, whether driven by
   wind or not, unless:**

   **(a)     The building or structure first
   sustains damage by a Covered
   Cause of Loss to its roof or walls
   through which the rain, snow,
   sleet, ice, sand or dust enters; or**

   **(b)     The loss or damage is caused by
   or results from thawing of snow
   sleet or ice on the building or
   structure.**

   * * *[17]

The Policies define the term "interior of any building or structure" as:

**G.     PROPERTY DEFINITIONS**

   * * *

   **13.     "Interior of any building or structure"**

---

[16] 2014-19 Policies (p. 1-2 MP T4 91 08 06).
[17] 2014-19 Policies (p. 4 MP T1 02 02 05).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **21** of **24**

> means all portions of the building or structure
> that are within the exterior facing surface
> material of the building or structure.[18]

Under these provisions, the Policies do not provide coverage for any water damage behind the "exterior facing surface material"—in this case, the T1-11 siding—unless the Apartments' roof or walls first sustained damage from a covered peril that allows rain to enter the buildings.  Here, YAES did not observe any covered perils that allowed water to leak behind the cladding.  Thus, the interior water intrusion limitation bars coverage.

### F.      The Policies exclude coverage for repeated leakage of water and the presence of moisture.

The Policies, under a Washington Endorsement, exclude coverage for the repeated leakage of water over a period of 14 days or more (the "Repeated Leakage Exclusion):

> **A.**      The EXCLUSIONS contained in Section **B.** of the
> BUSINESSOWNERS PROPERTY COVERAGE
> FORM are amended as follows:
>
> * * *
>
> > **2.**      The exclusion contained in **B.2.** are amended
> > as follows:
> >
> > * * *
> >
> > > **b.**      Exclusion **B.2.f.** is deleted and replaced
> > > by the following:
> > >
> > > > We will not pay for loss or damage
> > > > caused by or resulting from continuous
> > > > or repeated seepage or leakage of
> > > > water, or the presence or condensation
> > > > of humidity, moisture or vapor that
> > > > occurs over a period of 14 days or
> > > > more.[19]

YAES reported that defective waterproofing conditions at the Apartments resulted in long-term moisture intrusion causing damage to the Apartments.  Because YAES' report indicates that repeated water leakage and the presence of moisture took place over a period longer than 14 days, the Repeated Leakage Exclusion bars coverage.

---

[18] 2014-19 Policies (p. 36, 37 MP T1 02 02 05).
[19] 2014-19 Policies (p. 1 MP T4 91 08 06).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **22** of **24**

3.      **To the extent that Greenwood breached the Policies' prompt-notice provisions, the Policies do not provide coverage.**

The Policies are subject to several conditions, including a prompt-notice condition:

> **E.      PROPERTY LOSS CONDITIONS**
>
> The following conditions apply in addition to the Common Policy Conditions:
>
> * * *
>
> **3.      Duties in the Event of Loss or Damage**
>
> **a.**      You must see that the following are done in the event of loss or damage to Covered Property:
>
> * * *
>
> **(2)**      Give us prompt notice of the loss or damage.  Include a description of the property involved.
>
> **(3)**      As soon as possible, give us a description of how, when and where the loss or damage occurred.
>
> * * *[20]

Greenwood's failure to comply with these conditions of coverage is a breach of the Policies.

Given the nature of the loss and the Apartment's long history of moisture-related damage, it appears that Greenwood failed to promptly notify Travelers of the loss.  According to YAES' report, Greenwood received notice about the Apartments defective conditions, decay, and deterioration problems in 2004, 2009, 2010, and 2017.  Greenview, however, waited until it had begun recladding the Apartments in 2019 to notify Travelers.  To the extent Greenview's late notice prejudiced Travelers, Greenview's breach of the Polices' prompt-notice condition forfeits coverage under the Policies.

---

[20] 2014-19 Policies (p. 27-28 MP T1 02 02 05).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **23** of **24**

4.      __The Policies each contain a two-year suit-limitation provision.__

The Policies, amended by a Washington Endorsement, contain the following two-year suit
limitation provision:

> **A.**     This BUSINESSOWNERS PROPERTY COVERAGE
>         SPECIAL FORM is changed as follows:
>
>         * * *
>
> **16.**    Paragraph **F.4.** Legal Action Against Us is
>         replaced by the following:
>
>         **Legal Action Against Us**
>
>         No one may bring a legal action against us
>         under this insurance unless:
>
>         **a.**     There has been full compliance with all
>                 of the terms of this insurance; and
>
>         **b.**     The action is brought within two years
>                 after the date on which the direct
>                 physical loss or damage occurred.
>
>         If this action is brought pursuant to Sec. 3 of
>         RCW 48.30 then 20 days prior to filing such an
>         action, you are required to provide written
>         notice of the basis for the cause of action to us
>         and the Office of the Insurance Commissioner.
>         Such notice may be sent by regular mail,
>         registered mail, or certified mail with return
>         receipt requested.[21]

Under this provision, any contractual causes of action asserted against Travelers more than
two years after the date that the direct physical loss or damage occurred are time barred.

## CONCLUSION

For the reasons discussed above, Travelers respectfully declines coverage for Greenwood's
insurance claim.  If there is anything else that Greenwood feels that Travelers should
consider regarding the claim, please let us know right away.  This decision on coverage is
based on presently known information and is subject to change if additional information is
forthcoming.  Travelers will carefully consider any additional information submitted by

[21] 2014-16 Policies (p. 1, 4 MP T4 31 12 09); 2016-17 Policy (p. 1, 4 MP T4 31 09 15); 2017-19
Policies (p. 1, 4 MP T4 31 07 16).

Kyle Sturm & Linda Foreman
April 2, 2020
Page **24** of **24**


Greenwood and its representatives and will modify its coverage position if appropriate. Moving forward, any questions can be directed to my manager, Stephen Bryan, at sbryan@travelers.com as I will be retiring on April 3, 2020.

Travelers reserves its right to rely on the policy provisions quoted above, as well as any other provisions in the Policies not quoted or analyzed in this letter if it later determines that such provisions apply.  In addition to reserving its rights under the Policies, Travelers reserves its rights under applicable law.  No waiver or estoppel is intended nor should be inferred.


Sincerely,


Kent Stone
Business Insurance Claim Professional
573-353-8354


Fax:      800-798-1346
Email:   KSTONE@TRAVELERS.COM

Enclosure